David GREENHOUSE et al.,
Plaintiffs-Appellants,

v.

Most Reverend Charles Pascal GRECO et
al., Defendants-Appellees.

No. 75–2050.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1977.

Rehearing Denied Feb. 11, 1977.

Joseph R. Cooney, University Legal Serv., Washington, D.C., J. Harold Flannery, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., Merle McClung, Harvard Center for Law & Education, Cambridge, Mass., George M. Strickler, Jr., New Orleans, La., Benjamin P. Lamberton, Washington, D.C., for plaintiffs-appellants.

Camille F. Gravel, Jr., Dan E. Melichar, Alexandria, La., for Greco, Wakeman, and others.

Marc Dupuy, Jr., Marksville, La., for Presentation Sch. Bd.

Donald E. Walter, U.S. Atty., Shreveport, La., Thomas Boerschinger, Dept. of Justice, Tax Div., Washington, D.C., for Connally, Walters, and others.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Chief, Appellate Sec., Leonard J. Henzke, Jr., Atty., Dept. of Justice, Washington, D.C., for Secretary of the Treasury & Comm. of Internal Revenue.

Brian K. Landsberg, Miriam R. Eisenstein, Attys., Dept. of Justice, Civil Rights Div., Washington, D.C., for Dept. of H.E.W. Secretary.

William S. Estabrook, III, Atty., Tax Div., Dept. of Justice, Washington, D.C., for Secretary of the Treasury and the Commissioner of Internal Revenue.

Before JONES, WISDOM and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This case is in a procedural snarl that involves not mere niceties but the jurisdiction of this court. We remand to the district court with directions.

Plaintiffs' suit attempted to assert a class action for the purpose of ending alleged segregation and other racially discriminatory practices in the parochial schools in the Roman Catholic diocese of Alexandria, Louisiana. The diocese extends over 29 parishes in Louisiana. Plaintiffs resided in Natchitoches and Marksville, Louisiana, within the diocese but in separate parishes. There were three groups of defendants:

—the "diocesan defendants": the Bishop of the diocese, the diocese itself, and the superintendent of the diocesan parochial schools.

—the "Marksville defendants": the congregation of St. Joseph's, a civil corporation under Louisiana law, holding title to a substantially all-white parochial school in Marksville, sued as a class defendant representing other civil corporations holding title to the various parochial schools in the diocese.

—the "federal defendants": the Secretary of HEW, the Secretary of the Treasury, and the Commissioner of Internal Revenue.

On August 2 and December 20, 1973, the district court entered orders which had the effect of narrowing the suit to the two parochial schools located in Marksville, one of which had been all-white and the other all-black. See *Greenhouse v. Greco,* 368 F.Supp. 736 (W.D.La., 1973). The court limited the plaintiff class to the 39 plaintiffs residing in Marksville and dismissed the four plaintiffs from Natchitoches. After evidence was taken concerning the authority of the Bishop, the court dismissed him, the diocese, and the diocesan superintendent of schools as defendants. It held that the congregation of St. Joseph's could only be sued on behalf of itself and not as a class defendant. It added as defendants a church congregation in Marksville and an order of nuns who own property on which one of the Marksville schools is located. These orders were not entered up as judgments.

Prior to December 20, 1973, the federal defendants had filed motions to dismiss. These motions had not been acted on when the court entered its order of December 20, 1973, and have never been acted on.

The court noted in the December 1973 order that plaintiffs intended to appeal to test the validity of the suit's being narrowed to the two schools in Marksville. 368 F.Supp. at 737. Plaintiffs did appeal, and this court dismissed the appeal. *Greenhouse v. Greco,* 496 F.2d 213 (C.A. 5, 1974). We pointed out that the denial of class action treatment was interlocutory and non-appealable, that part of the case was still pending in the district court, and that the denial of class action was not the "death knell" of the case.

Plaintiffs then made a motion to the district court in the form of a letter, which is set out in the margin.[1] The reference in

---

1. "Dear Judge Scott:

"Although the captioned matter is ripe for further proceedings in your Court, an examination of the current position of the case in the light of the Court's Rulings of August 2 and December 20, 1973, suggest that the case perhaps may be disposed of now without further litigation.

"The Court will recall that the government defendants' motions to dismiss were set for argument this summer but that due to other business, the Court was unable to hear the motions calendar set for that day. Plaintiffs are agreeable to both these motions being decided on the basis of the briefs. However, because we assume that the Court's rulings of August 2 and December 29 [sic], 1973 limit the ambit of any relief sought against the government defendants to the situation in Marksville, resolution of the issues presented by the government defendants' motions may be unnecessary.

"Of course, relief as to the school segregation which we believe remains in the Diocese may not, under the Court's Rulings, be sought by the remaining plaintiffs. And in briefing our appeal from Your Honor's Rulings, we expressed to the Fifth Circuit the belief that, if our appeal was dismissed, the case—limited as it now is to Marksville—would be found moot on its return to the District Court. This observation was based on the Stipulation reached on Marksville at the February, 1973 hearing (See Transcript at page 514), and on two Fifth Circuit cases

the letter to the case's becoming moot refers to the fact that after this suit was filed the two segregated schools in Marksville had been paired. The court, on February 12, 1975, made the following minute entry:

ORDER BY JUDGE SCOTT that, matters under consideration in this suit having been reduced to the two diocesan schools in Marksville, Louisiana; these schools having been fully integrated by the parties, there being no other issues pertaining to the Marksville parochial schools remaining before the Court; and the case therefore having become moot, this matter is fully and finally dismissed, filed.

The same day the court entered this judgment signed by the district judge:

Matters under consideration in this suit having been reduced to the two diocesan schools in Marksville, Louisiana; these schools having been fully integrated by the parties; there being no other issues pertaining to the Marksville parochial schools remaining before the Court; and the case therefore having become moot; it is

ORDERED, ADJUDGED AND DECREED that this matter be and it is hereby fully and finally dismissed.

The motions of the federal defendants still had never been acted upon.

March 10, 1975, plaintiffs filed the present appeal, again seeking to review the orders entered August 2 and December 20, 1973. On May 28, 1975, they were met at

the threshold by a motion of the non-federal defendants to dismiss the appeal on the grounds that it is from a non-appealable consent judgment and that the cause is moot. The federal defendants, unsure of their status in this court, filed no brief until they were advised by the court that we might take up jurisdictional questions. Then they filed a lengthy and comprehensive brief on the question of the jurisdiction of the *district court* over the federal defendants. The problem is whether plaintiffs cut themselves off from their objective of appellate review by seeking, and obtaining, the judgment entered February 12, 1974.

The *case* was not moot on February 12, 1973. All parties seem to agree that the issues with respect to the Marksville schools had been mooted by their having been paired. With respect to the remainder of the suit, the issues against the diocesan defendants had been the subject of the August and December orders, but those orders were not "final orders." The issues with respect to the federal defendants had not been the subject of any orders.[2] The issues, insofar as they related to the entire diocese, were dormant but for want of a final order, not for mootness. Plaintiffs' effort to achieve finality was carried out through the erroneous means of having the court declare the entire case moot. At no time did plaintiffs request a Rule 54(b) certificate to permit an appeal relating to less than all issues and less than all parties.

---

which we read as foreclosing further relief in Marksville. *Smith v. Y.M.C.A.*, 462 F.2d 634, 643 (1971); *Walling v. Florida Hardware Co.*, 142 F.2d 444, 445 (5th Cir. 1944). It remains plaintiffs' position that the case left after the Rulings of August 2 and December 20, 1973, is currently moot as to all defendants. Accordingly, plaintiffs submit that the proper disposition at this time is entry of a dismissal of the action on grounds of mootness.

"However, if the Court does not concur that the case is moot, we believe that the issues found remaining should be resolved by the entry of a declaratory judgment as to the rights of the Marksville plaintiffs against both St. Josephs and the government defendants. We believe such a judgment can be

entered on the evidentiary record as it now stands, without further discovery or evidentiary hearings. After the entry of such a judgment we believe the Court should retain jurisdiction of the matter.

"We request that this communication be treated as plaintiffs' motion on the present record for the dispositions suggested above."

2. The claims against the federal defendants may, or may not, be at an end if the August and December orders are held to be correct. While we intimate no opinion on the matter, at least some of the claims made by plaintiffs against the federal defendants are arguably claims by plaintiffs as taxpayers rather than as pupils attending specific schools at specific places.

The doctrine that one may not appeal from a consent judgment does not apply to the situation before us.

By consenting to the judgment that is entered, a party waives his right to appeal from it. He may, however, urge on appeal that his consent was not actually given.

9 Moore Federal Practice ¶ 203.06. It is obvious that plaintiffs did not intend by their letter-motion to consent to a judgment that would preclude them from the appellate review the desire for which triggered their request that a judgment be entered. Nor could the trial court have entertained such an intent. It was aware that plaintiffs were seeking to review the two orders that had narrowed the case. It would be inconsistent with the court's obligation under F.R.Civ.P. 23 for the court to terminate the case by a non-appealable judgment that would dispose of the claims for diocesan-wide relief, raised by non-Marksville plaintiffs and on behalf of a diocesan-wide class.

The motion of defendants to dismiss the appeal on the grounds that the case is moot and that plaintiffs cannot appeal from the consent judgment, must be denied. That does not, however, end the matter. Plaintiffs should have filed a Rule 60(b) motion to correct the judgment. They did not do so, but we treat their opposition filed in this court on June 16, 1975, to the motion to dismiss the appeal as a Rule 60(b) motion. We remand the case to the district court with directions to vacate the judgment of February 12, 1975, and to enter a corrected judgment which should be final as to all issues and parties, or, if final as to less than all issues and all parties, a Rule 54(b) certificate should be issued.

Motion to dismiss DENIED. REMANDED with directions. Costs are taxed against appellants.

JONES, Circuit Judge, dissenting:

It is not always the hard case that makes bad law.

I do not find, as does the majority, anything in the letter of the appellant which qualifies its motion to dismiss the action for mootness. I would not put the district court in error for doing that which the appellant asked the court to do.